**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GRADY RODRIGUAS BRYE,

      Petitioner,

v.                                Case No. 8:19-cv-2468-VMC-MRM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

**ORDER**

Petitioner Grady Rodriguas Brye, a state prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, the response in opposition (Doc. 14) and Brye's reply (Doc. 20), the petition is DENIED. The Court also GRANTS Brye's motion to hear and rule (Doc. 30) to the extent that this order resolves the petition.

**Procedural History**

A state court jury convicted Brye of sexual battery. (Doc. 15-1, Exs. 4, 8.) The state trial court sentenced Brye to 30 years in prison as a prison releasee reoffender. (*Id.*, Ex. 9.) The state appellate court *per curiam* affirmed the conviction and sentence. (Doc. 15-2, Ex. 20.) Brye sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 25.) The state court denied his claims. (Doc. 15-3, Ex. 26.) The state appellate court *per curiam* affirmed the denial of relief. (Doc. 15-4, Ex. 33.)

1

## Facts[1]

On the evening of June 16, 2014, the victim met Brye at a park in St. Petersburg, Florida. Brye was with people the victim knew. When the victim approached the group, Brye and others gave her crack cocaine. The victim later left with Brye to go to his house to smoke more crack cocaine.

On the way, the victim and Brye were flirting, but there was no discussion of sex and the victim did not agree to have sex with Brye. The victim wanted drugs, and she and Brye each took a hit of crack cocaine on the way. When they arrived in a wooded area, the victim realized they were not going to a house. Instead, she saw a tent set up next to a warehouse. The victim felt uncomfortable but wanted more drugs.

The victim sat down on some padding near the tent. She and Brye both smoked some of Brye's crack cocaine. Brye then demanded oral sex and called the victim a gutter whore. The victim said she was going to leave. When she got up, Brye tripped her. They struggled, and the victim bit Brye's hand. Brye got on top of the victim, and she tried to push him away. Brye began to strangle the victim with both hands. The victim tried to get Brye's hands off her throat, but she lost consciousness.

When the victim regained consciousness, she felt intoxicated. Brye still had one hand on her throat and was using his other hand to take off her clothes. Brye told the victim, "Bitch, you smoked my dope. I fucking own you," and continued to call her a

---

[1] The factual summary is based on the trial transcript and appellate briefs.

gutter whore. (Doc. 15-5, Ex. 38, pp. 228-29.) When the victim asked Brye if he would let her get out of the dirt, he grabbed her by the hair and took her near the tent.

Brye sat the victim down by the tent and told her to lie down. Still grabbing her by the hair, Brye forced his penis into her mouth. The victim complied because she thought Brye would kill her. When Brye let go of the victim's hair so he could smoke more crack, she ran. After the victim reached a road, a driver named Derek Parent stopped and gave her his shirt. Parent recalled that he suddenly saw a naked woman running towards the road and that she was screaming, "Help. Help. He is going to kill me. Please somebody help." (Doc. 15-5, Ex. 38, p. 267.) The victim had no belongings with her, and her tone of voice sounded like she was terrified for her life. Officer Alford Cope responded to the scene. He went to the hospital with the victim. There, Officer Cope observed that the victim's neck was red, her voice was raspy, and her hair was disheveled.

The victim's toe had been cut so badly that it was almost severed, and she had scratches on her body. She stated that a CAT scan was performed on her neck and that she had soft tissue damage from the strangulation. Rita Hall, the nurse who conducted a rape exam observed that the victim's neck was red and swollen and had tiny red marks that indicated trauma and hemorrhaging blood vessels. Hall did not see finger or hand marks on the victim's neck, but concluded that the injuries were consistent with strangulation. Hall also saw multiple scratches on the victim's body.

Detective Collin Brooks met with the victim at the hospital. Detective Brooks observed redness around the victim's neck, red spots in her eyes, scrapes on her

3

knuckles and hands, and a large cut on her toe. Detective Brooks noticed that the victim's voice was extremely raspy. Brye's DNA was found under the victim's fingernails. The victim's DNA was found on a swab taken from Brye's penis.

Brye testified in his own defense. He stated that he met the victim at the park and arranged for his friend to give the victim drugs. Brye asked the victim if she would be interested in sex and what oral sex would cost him. The victim told him it would be $30; he agreed, and they left for his campsite. Brye testified that the victim consensually performed oral sex in exchange for money and drugs, and that she stole money from his wallet.

## Standards Of Review

**The AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court

5

issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

Brye alleges ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Brye must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Brye must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## Exhaustion Of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default

which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case in which a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

**Discussion**

**Ground One**

Brye claims that trial counsel was ineffective for failing to (1) subpoena the radiologist who performed a CAT scan on the victim at the hospital; (2) obtain the results of the CAT scan or object to the State's alleged failure to disclose the results of the CAT scan; and (3) object to or move to exclude testimony by the State witnesses who testified about the victim's injuries.

**A.    Failure To Subpoena Radiologist**

The state court denied Brye's claim that counsel should have subpoenaed the radiologist. Brye contends that the CAT scan showed no injuries to the victim, contrary to her trial testimony that the CAT scan revealed soft tissue damage. The state court found:

> Defendant alleges that counsel was ineffective for failing to call a radiologist as an expert witness at trial. Defendant contends that the radiologist would have testified that the CAT scan showed no injuries, and would have rebutted the victim's testimony that the CAT scan revealed soft tissue damage to her throat. Defendant concludes that this testimony would have convinced the jury that the victim lied about her injuries and that the jury would have found Defendant not guilty of sexual battery.
>
> When alleging that counsel was ineffective for failing to call an expert witness, defendants must allege why counsel needed to hire the expert of explain how that expert's testimony would have rebutted a material fact at trial. *See State v. Lucas*, 183 So.3d 1027, 1032-33 (Fla. 2016) (explaining that postconviction claims regarding counsel's failure to call an expert witness must "allege sufficient facts concerning the necessity of the uncalled expert and the testimony the expert could have provided at trial."). The Court finds Claim Two (D) to be facially sufficient to both prongs of *Strickland*, as modified by *Lucas*.
>
> As an initial matter, the Court notes that Defendant's proposed effect of the expert witness testimony is conclusory and speculative. A speculative claim is not grounds for postconviction relief. *See Bass v. State*, 932 So.2d 1170, 1172 (Fla. 2d DCA 2006). Additionally, it is not readily apparent to the Court how a radiologist would have reviewed and testified to the victim's medical records, which are confidential, unless the victim voluntarily provided her medical records and waived her right to privacy. The facts of this case do not present a situation in which the victim could be compelled to provide her medical records; thus, it is not readily apparent to this Court how such expert witness testimony would be admissible. Therefore, the Court finds that counsel was not deficient for failing to obtain a radiologist to testify as an expert  witness regarding the victim's CAT scan results and Claim Two (D) fails the first prong of *Strickland*.

Moreover, noting that the victim enjoys a right to privacy in her medical records and such records would have been inadmissible, the Court will find that Defendant was not prejudiced by counsel's failure to obtain a radiologist to testify to the victim's CAT scan results. The soft tissue damage to the victim's throat was not a central aspect of the trial. The State argued that the victim's testimony, the red marks on the victim's throat, as well as her running naked into the road, showed that the Defendant forcibly had sex with the victim against her will. Therefore, Claim Two (D) fails both prongs of *Strickland* and is denied.

(Doc. 15-3, Ex. 26, pp. 123-25) (state court's footnote omitted).

The state court did not unreasonably deny Brye's claim. As the state court noted, Brye's assertions about the testimony that an expert might have given are speculative. Speculation cannot establish that counsel was ineffective. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim).

Further, as the state court explained, the degree of injuries to the victim's throat was not a critical issue in the trial. Moreover, the state court determined that evidence concerning the victim's medical records would have been inadmissible. This Court must defer to the state court's determination of Florida's evidentiary law. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir.

1984))); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997))).

As the extent of the injury was not a major issue at trial and the identified evidence about the injury would not have been admissible, the state court did not unreasonably determine that Brye failed to show counsel performed deficiently for not moving to introduce the evidence. Nor did the state court unreasonably determine that Brye failed to show prejudice due to counsel's performance. Because the state court did not unreasonably apply *Strickland* or unreasonably determine the facts in denying Brye's claim, he is not entitled to relief on Ground One A.

### B.  Failure To Object To The State's Non-Disclosure Of CAT Scan

Brye claimed that the State's alleged failure to disclose the CAT scan results violated the rules of discovery. The state court denied his claim that counsel was ineffective for failing to object to this alleged violation:

(A) – <u>Richardson Violation</u>

Defendant contends that the State committed a discovery violation by failing to disclose the victim's CAT scan results in violation of *Richardson v. State*, 246 So.2d 771 (Fla. 1971). "[W]hen the State violates a discovery rule, the trial court has discretion to determine whether the violation resulted in harm or prejudice to the defendant, but this discretion can be properly exercised only after adequate inquiry into all the surrounding

circumstances." *See State v. Hall*, 509 So.2d 1093 (Fla. 1987). In making such an inquiry, the trial judge must first determine whether a discovery violation occurred. If a violation is found, the court must assess whether the State's discovery violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what effect it had on the defendant's ability to prepare for trial. *See Sinclair v. State*, 657 So.2d 1138, 1140 (Fla. 1995).

The record refutes Defendant's claim that the State failed to disclose the victim's CAT scan results in violation of *Richardson*. The CAT scan results themselves were not introduced into evidence at trial. The victim testified during her deposition that a CAT scan was performed at the hospital and that the doctors found soft tissue damage. Accordingly, Defendant was on notice of the victim's testimony describing what happened at the hospital. At trial, the victim testified consistently with her deposition by stating that, after the incident occurred, she went to the hospital where the doctors performed a CAT scan and discovered soft tissue damage. The victim's deposition and trial testimony regarding the CAT scan are virtually identical. Thus, the Court finds that the State did not violate *Richardson* by violating any discovery rules, nor did the State willfully or inadvertently suppress the victim's CAT scan results. Moreover, noting that the CAT scan results were not introduced as evidence, the Court will find that there is no reasonable probability that Defendant was prejudiced by the alleged violation. Therefore, Claim Two (A) is denied.

## (B) – Counsel's Failure to Object to Richardson Violation

Next, Defendant claims that counsel was ineffective for failing to object to the State's *Richardson* violation. Having found in Claim One [sic] (A) that the State did not violate a discovery rule relating to the victim's CAT scan because it did not surprise counsel with the CAT scan results at trial, the Court finds that any objection on these grounds would have been meritless. Counsel cannot be deficient, nor can Defendant be prejudiced by, counsel's failure to raise a meritless objection. *See Schoenwetter v. State*, 46 So.3d 535, 546 (Fla. 2010) ("[c]ounsel cannot be deemed ineffective for failing to make a meritless objection") (quoting *Hitchcock v. State*, 991 So.2d 337, 361 (Fla. 2008)). Therefore, Claim Two (B) fails both prongs of *Strickland* and is denied.

(Doc. 15-3, Ex. 26, pp. 121-22.)

Brye does not show entitlement to relief. The state court determined that the prosecution did not violate discovery by failing to disclose the CAT scan. This Court must defer to the state court's ruling on Florida law governing discovery requirements for state court trials. *See Pinkney*, 876 F.3d at 1295; *Herring*, 397 F.3d at 1354-55. The record supports the state court's conclusion that the defense would have been on notice of the victim's statements about the CAT scan results through her deposition testimony. (Doc. 15-3, Ex. 26, pp. 328-29.) Therefore, the state court reasonably concluded that counsel was not ineffective for failing to make a meritless objection alleging a discovery violation. *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (stating that an attorney "cannot be deficient for failing to raise a meritless claim").

Brye has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground One B.

## C. Failure To Object To Or Move To Exclude Prosecution Witnesses' Testimony About The Victim's Injuries

Brye argues that counsel should have objected to or moved to exclude testimony about the victim's injuries. The state court denied this claim:

> Defendant claims that counsel was ineffective for failing to file a motion to suppress the testimony of Rita Hall, the nurse examiner in this case, and that of the law enforcement witnesses. Specifically, Defendant contends that counsel should have prevented the nurse examiner and the law enforcement witnesses from testifying that they personally observed injuries to the victim because Defendant contends that the photographs of the victim and the CAT scan performed at the hospital showed no

injuries. Alternatively, Defendant contends that counsel should have contemporaneously objected to their testimony. Finally, Defendant alleges that counsel should have called a radiologist as an expert witness to testify that the CAT scan showed no injuries and should have used the radiologist's testimony to suppress the testimony of the witnesses who testified that they observed the victim's injuries.

In order to establish a claim of ineffective assistance of counsel based on the failure to file a motion to suppress, a defendant must demonstrate that counsel knew a valid basis existed to suppress the relevant evidence, yet failed to do so. *See Harrison v. State*, 562 So.2d 827, 827-28 (Fla. 2d DCA 1990). Furthermore, counsel is not deficient for failing to file a non-meritorious pleading. *See United States v. Holland*, 117 F.3d 589, 594 (D.C. Cir. 1997). The Florida Rules of Criminal Procedure allow counsel to file a motion to suppress evidence or testimony that was obtained in violation of the Fourth Amendment. *See* Fla. R. Crim. P. 3.190(g), (h). The rules do not provide for motions to suppress witness testimony that is obtained legally and is otherwise admissible. Furthermore, all relevant evidence is admissible, unless it is substantially outweighed by unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. *See* §§ 90.402, 90.403, Fla. Stat. (2012).

Defendant fails to allege a valid basis for filing a motion to suppress. *See id.*; *see also* Fla. R. Crim. P. 3.190(g), (h). Such a motion to suppress, if filed on the grounds Defendant alleges, would not have been meritorious. Similarly, a contemporaneous objection to the witness' testimony based on the grounds that the photographs and CAT scan showed no visible injuries would have also been denied. Therefore, the Court finds that counsel was not deficient for failing to file a motion to suppress or object to the witness' testimony. *See Holland*, 117 F.3d at 594. Accordingly, Claim Two (C) fails the first prong of *Strickland*. Noting that the testimony of the nurse examiner and the law enforcement witnesses would not have been excluded for the reasons Defendant proposes, the Court will also find that Defendant was not prejudiced by counsel's failure to file a motion to suppress or contemporaneously object to the witness' testimony. Accordingly, Claim Two (C) fails both prongs of *Strickland* and is denied.

(Doc. 15-3, Ex. 26, pp. 122-23.)

14

Brye does not show entitlement to relief. This Court must defer to the state court's ruling that no valid basis to suppress the testimony existed under state law. *See Pinkney*, 876 F.3d at 1295; *Herring*, 397 F.3d at 1354-55. Thus, as the state court found, any motion to suppress on the bases proposed by Brye would have been denied. Brye cannot show either deficient performance by counsel for failing to file a meritless motion or resulting prejudice. *See Freeman*, 536 F.3d at 1233. Having failed to show that the State court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, Brye is not entitled to relief on Ground One C.

**Ground Two**

Brye argues that trial counsel was ineffective for failing to retain an expert to testify to the victim's alleged lack of credibility. He contends that the victim "was a crack cocaine and opiate drug addict with a psychosis" who had "been Baker Acted, and had a history of prostitution." (Doc. 1, p. 7.)[2] Brye asserts that an expert could have testified about the victim's prior involuntary commitments, counseling, and prescription medications and about the effect of crack cocaine and opiates on her ability to accurately perceive the events.

The state court denied Brye's claim:

> Defendant contends that counsel should have called an expert witness who would have testified to the victim's history of mental illness and the effects of using crack cocaine, which the victim admitted to using on the

---

[2] *See Doe v. State*, 217 So.3d 1020, 1024 (Fla. 2017) (explaining that § 394.467, Fla. Stat., "also known as the Baker Act, governs the involuntary inpatient placement of persons with mental illness").

night of the incident. Defendant concludes that this testimony would have convinced the jury that the victim consented to oral sex and Defendant would have been found not guilty of sexual battery.

When alleging that counsel was ineffective for failing to call an expert witness, defendants must allege why counsel needed to hire the expert or explain how that expert's testimony would have rebutted a material fact at trial. *See State v. Lucas*, 183 So.3d 1027, 1032-33 (Fla. 2016) (explaining that postconviction claims regarding counsel's failure to call an expert witness must "allege sufficient facts concerning the necessity of the uncalled expert and the testimony the expert could have provided at trial."). The Court finds Claim Three to be facially sufficient to both prongs of *Strickland*, as modified by *Lucas*.

As an initial matter, the Court notes that Defendant's proposed effect of the expert witness testimony is conclusory and speculative. A speculative claim is not grounds for postconviction relief. *See Bass v. State*, 932 So.2d 1170, 1172 (Fla. 2d DCA 2006). As to counsel's failure to call an expert to testify regarding the victim's mental health history, it is unclear to this Court how counsel could have properly admitted evidence of the victim's alleged mental history. Evidence of the victim's mental health history would be inadmissible because it is irrelevant to the instant offense and the key issue at trial, which is whether the victim consented to have sex with the Defendant.

Even if the victim had a then-existing mental illness that was significant enough to affect her ability to consent, evidence of her mental illness would have been admissible against Defendant to show that the victim did not consent. *See* § 794.022, Fla. Stat. (2014) ("When consent of the victim is a defense to prosecution under s. 787.06, s. 794.011, or s. 800.04, evidence of the victim's mental incapacity or defect is admissible to prove that the consent was not intelligent, knowing, or voluntary; and the court shall instruct the jury accordingly."). Accordingly, it is apparent that expert testimony regarding the victim's alleged mental health history would not have been as helpful as Defendant speculates it would have been because it would have been admissible as evidence undermining the defense theory of consent.

Similarly, as to counsel's failure to call an expert witness to testify to the effects of crack cocaine on the victim, the Court notes that there is no reasonable probability that the proposed testimony would have been as helpful to Defendant's defense as he speculates it would have been. Additionally, the State could have used it to argue that the effects of crack

cocaine diminished the victim's ability to consent, which was not an argument that arose at trial.

The record reflects that the victim candidly admitted her use of cocaine and explained how her use of crack cocaine affected her. The victim essentially admitted that, on the date of the offense, she spent the entire afternoon smoking crack cocaine and seeking out more crack cocaine to smoke. The victim testified to smoking crack cocaine, directly before the offense, when she and the Defendant arrived at the Defendant's campsite. Additionally, the victim testified to how the crack cocaine affected her that day, explaining, "it is a stimulant, I wanted more . . . It is like having blinders on. You're not really aware of anything but wanting to get more of that drug." Thus, this Court is not convinced that an expert witness' testimony regarding the effects of crack cocaine would have added any details that would have benefited the Defendant by convincing the jury that the victim's drug use caused her to consent to have sex with the Defendant.

Given the facts of this case, the Court finds that Claim Three fails both prongs of *Strickland*. First, counsel was not ineffective for failing to call an expert witness to testify to the effects of crack cocaine or the victim's mental health issues. Counsel cannot possibly be deficient for failing to present evidence that is irrelevant or undermines his only viable theory of defense. Second, no reasonable probability exists that the outcome of the trial would have been different if counsel had introduced such evidence. To the contrary, the Court notes that evidence that the victim was too mentally ill or high on drugs to consent at the time of the offense would have undermined the defense theory of consent. Therefore, Claim Three fails both prongs of *Strickland* and is denied.

(Doc. 15-3, Ex. 26, pp. 125-26) (state court's record citations omitted).

Brye does not show that the state court's decision was unreasonable. Initially, as the state court noted, his assertions about an expert's prospective testimony are too speculative to demonstrate that counsel was ineffective. *See Tejada*, 941 F.2d at 1559. Further, the state court determined that evidence about the victim's mental health would have been inadmissible under Florida law for the purposes Brye sought to introduce it. This Court must defer to the determination of state law in assessing the

17

state court's decision on Brye's ineffective assistance claim. *See Pinkney*, 876 F.3d at 1295; *Herring*, 397 F.3d at 1354-55. Counsel was not ineffective for failing to move to introduce inadmissible evidence. *See Freeman*, 536 F.3d at 1233.

Finally, the victim admitted her drug use and described the drugs' effects on her. For the reasons addressed in the state court's order, presenting other information about the drugs' effects on the victim was unlikely to have benefitted the defense, and risked undercutting Brye's theory that the victim consented to sexual activity. Brye therefore does not show that counsel was ineffective for failing to use an expert to present additional evidence about the victim's drug use and history or that he was prejudiced by counsel's performance. Because Brye does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Two.

**Ground Three**

Brye argues that trial counsel was ineffective for not impeaching the victim with her prior inconsistent statement to police. He contends that her statement omitted several factual allegations to which she testified at trial. The state court denied this claim:

> Defendant contends that, at trial, the victim testified to four aspects of the incident which are inconsistent because they are not mentioned in the police reports. Defendant seems to conclude that, because portions of the victim's trial testimony were left unmentioned in the police reports, counsel should have impeached the victim's trial testimony with the fact that it was not previously mentioned in the police reports. The portions of the victim's testimony that Defendant contends should have been impeached are: 1) that the Defendant told the victim, "You're going to

suck my d[ ]ck, you gutter wh[ ]re, 2) when the victim decided to leave the Defendant's campsite, Defendant tripped her and called her a "gutter wh[ ]re," 3) the victim "bit [Defendant's] hand," and 4) the victim thought she was walking with Defendant to his house, not a homeless campsite, because she kept asking him, "I can charge my phone there, right?" Defendant concludes that, it [sic] counsel would have impeached the victim with her prior inconsistent statements, it would have destroyed the victim's credibility and the jury would have found Defendant not guilty. The Court finds Claim Four to be facially sufficient as to both prongs of *Strickland*.

Counsel may impeach a witness by "introducing statements of the witness which are inconsistent with the witness's present testimony." § 90.608(1), Fla. Stat. (2015). To be inconsistent, a prior statement must directly contradict or be materially different than the testimony at trial. *See Pearce v. State*, 880 So.2d 561, 569 (Fla. 2004). "The inconsistency must involve a material, significant fact rather than mere details." *Id*.; *see also Morton v. State*, 689 So.2d 259, 264 (Fla. 1997) (noting that "nit-picking" of details is not permitted and would be considered an improper impeachment). Police reports contain the facts and statements the police officer deems useful for the officer's investigation, and do not necessarily reflect everything the victim may have told the police during the course of an interview. Accordingly, unless the police report contains a sworn statement from the victim and directly contradicts the testimony at trial, a police report cannot generally be used to impeach a victim's trial testimony. If the victim provides a written statement or even an oral statement to police, then that statement may be used to later impeach the trial testimony, but only if the prior statement directly contradicts or is materially different from the trial testimony. *See Pearce*, 880 So.2d at 569.

Attached to Defendant's motion (Defendant's Exhibit 1) are the police reports that Defendant contends are inconsistent with the victim's trial testimony. Notably, none of the statements that Defendant contends should have been impeached directly contradict or are materially different than the statements given to police officers. Additionally, the victim's trial testimony is similar to her deposition testimony, where she indicated that the Defendant called her a "gutter wh[ ]re," tripped her when she tried to leave the campsite, and that she bit Defendant's hand. Additionally, the victim testified in her deposition that she thought she was walking with the Defendant to a house because she kept asking him, "I can charge my phone there, right?"

19

The record in this case reflects that the victim's trial testimony is consistent with deposition testimony, and did not directly contradict any of her statements as relayed in the police report. Accordingly, if counsel had attempted to impeach the victim with her prior *consistent* statements or the fact that the police reported failed to contain every detail of her trial testimony, it would have amounted to an improper impeachment. *See* § 90.608(1), Fla. Stat. (2015); *see also Pearce*, 880 So.2d at 569; *Morton*, 689 So.2d at 264. Counsel cannot possibly be ineffective for failing to perform an improper impeachment, nor can Defendant be prejudiced by counsel's failure to perform an improper impeachment. *See Ferrell v. State*, 29 So.3d 959, 976 (Fla. 2010) (noting that counsel cannot be found ineffective for failing to raise a meritless objection). Therefore, Claim Four fails both prongs of *Strickland* and is denied.

(Doc. 15-3, Ex. 26, pp. 126-28) (state court's record citations and footnotes omitted) (emphasis and brackets in state court's order).

Brye does not establish entitlement to relief. The state court determined that the identified portions of the victim's trial testimony were consistent with her deposition testimony and did not directly conflict her statements as written in the police report. The record supports these conclusions. (Doc. 15-2, Ex. 25, pp. 50-59; Doc. 15-3, Ex. 26, pp. 322-24.) Thus, Brye fails to show that the state court's decision was based on an unreasonable determination of fact. This Court must defer to the state court's determination that, in light of these facts, the proposed impeachment of the victim would not have been permissible under Florida law. *See Pinkney*, 876 F.3d at 1295; *Herring*, 397 F.3d at 1354-55. Brye cannot show that counsel was ineffective for failing to pursue a meritless issue. *See Freeman*, 536 F.3d at 1233.

Brye does not show that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Ground Three does not warrant relief.

**Ground Four**

Brye asserts that trial counsel was ineffective for failing to obtain exculpatory evidence. Brye contends that counsel should have investigated photographs of the victim's clothing, as well as the clothing itself. He contends that this investigation would have shown that the clothing was not dirty, thereby establishing that the victim lied when she said that Brye took off all her clothes while she was on the ground and that police tampered with the clothing.

The state court denied this ground:

Defendant contends that counsel should have used the victim's clothes to show that he did not forcibly undress her, but that the victim voluntarily undressed herself. Defendant concludes that the victim's clothing would have been exculpatory evidence because the clothes were too clean to have been removed by the Defendant with one hand, as the victim testified.

At trial, forensic technician Asia Roth testified that she collected evidence and took photographs at the crime scene, the Defendant's homeless campsite. Officer Roth testified that the victim's shorts were on the grounds at the Defendant's campsite and were covered with leaves. Accordingly, a photograph of the shorts was among one of the photographs of the campsite introduced at trial. At trial, the victim testified that she lost consciousness when the Defendant was choking her and that when the regained consciousness, she was aware that the Defendant was removing her clothing. The victim thought that Defendant must have kept one hand on her throat, choking her, while he used the other hand to remove her clothing. On cross-examination, the victim admitted that she and her clothes would have had dirt on them because she was laying in the dirt while Defendant removed her clothes.

21

As an initial matter, the Court notes that the cleanliness of the victim's clothes does little to demonstrate whether the victim or the Defendant removed the victim's clothes. Defendant summarily concludes that seeing the victim's clean clothes would have convinced the jury that the victim undressed herself and, therefore, consented to have oral sex with the Defendant. However, the cleanliness of the victim's clothes does not indicate who undressed the victim. Even if Defendant could prove that the victim voluntarily undressed herself, that fact does not necessarily show that the victim consented to sex, especially in light of the evidence tending to show that the victim did not consent.[FN]

> [FN] The victim left all of her belongings at the Defendant's campsite and ran naked out onto a public road to escape from the Defendant and get help. In her hurry to escape, the victim severely cut her toe such that it was nearly severed and required emergency stitches. Witnesses who observed the victim at the scene and during medical examinations testified that the victim's throat was red and her voice was raspy. The Defendant's DNA was found under the victim's fingernails, supporting her claim that she scratched the Defendant in an attempt to defend herself.

The issue which had the potential to cast reasonable doubt as to the victim's account of events is that it would have been difficult for the Defendant to remove the victim's clothing while simultaneously choking her. Notably, counsel did cross-examine the victim and argue in closing that it is difficult to choke someone and remove their clothing at the same time. Furthermore, if counsel had introduced the actual clothes worn by the victim, it would have been cumulative to the photos of the victim's clothes presented to the jury at trial. The jury was able to determine, from the photographs introduced at trial, whether the clothes were clean or dirty. Counsel cannot possibly be ineffective for failing to present cumulative evidence. *See Solorzano v. State*, 25 So.3d 19 (Fla. 2d DCA 2009). Thus, Claim Five fails the first prong of *Strickland*.

Although it is not necessary to apply the second prong of *Strickland* to this claim, the Court also finds that Defendant was not prejudiced by counsel's failure to present the victim's clothes to the jury. The cleanliness of the victim's clothes were not relevant to any material issue disputed at trial. The disputed issue at trial was whether the victim consented to perform oral sex on the Defendant. Even if Defendant could prove that the victim undressed herself, which is not what is reflected in the record, that fact alone would not undermine confidence in the

22

outcome the of the case due to the other evidence of sexual battery. Even if counsel had introduced the victim's clothes, no reasonable probability exists that the jury would have then determined that the victim consented to have sex after viewing the victim's clean clothes. Therefore, Claim Five fails both prongs of *Strickland* and is denied.

(Doc. 15-3, Ex. 26, pp. 128-30) (state court's record citations omitted)

The state court did not unreasonably deny this claim. As the state court noted, the clothes' clean appearance did not establish who removed them. Even if the clothes' cleanliness could be taken to suggest that the victim removed them, such a suggestion does not establish the victim's consent, especially given the evidence indicating a lack of consent set out in the state court's order. Additionally, the clothes would have been cumulative to the extent the jury saw photographs of the appearance and condition of the victim's shorts. Under these circumstances, Brye fails to show a reasonable probability of a different outcome at trial had counsel further investigated the victim's clothing. Brye does not show that the state court's decision involved an unreasonable application of *Strickland*. Nor does he show that the state court's decision was based on an unreasonable factual determination. Brye is not entitled to relief on Ground Four.

**Ground Five**

Brye argues that trial counsel was ineffective and represented him while under a conflict of interest because trial counsel admitted to the jury pool that Brye smoked crack cocaine. Brye contends that counsel should not have acknowledged his drug use without his consent and that he never actually admitted smoking crack cocaine.

The state court denied Brye's claim:

Defendant contends that counsel was ineffective when counsel told the pool of potential jurors that the Defendant and the victim smoked crack cocaine together on their way from Williams Park in downtown St. Petersburg to the Defendant's campsite near [redacted] in St. Petersburg. Defendant maintains that he never smoked crack with the victim, and concludes that it was highly prejudicial for counsel to tell the jury that the Defendant smoked crack with the victim as they walked to his campsite, because it tends to corroborate the victim's trial testimony that she was able to escape from the Defendant when he took a break from sexually battering her to smoke crack. Defendant contends that counsel effectively stipulated . . . to the fact that Defendant smoked crack as being true and erroneously concludes that it was a conflict of interest for counsel to make such a statement to the jurors.

Based on the context of the claim, it is clear that Defendant is not alleging that an actual conflict of interest existed with counsel, but is alleging that counsel was ineffective due to an improper voir dire technique. Nevertheless, Defendant is not entitled to relief on this claim. The record refutes Defendant's claim that counsel effectively stipulated to the Defendant's drug use. Instead, counsel asked generalized questions to gauge the jurors' opinions on drug use. At no point during counsel's voir dire on drug abuse did counsel actually stipulate to the Defendant's drug use or admit that the Defendant used drugs. Accordingly, Claim Six is without merit.

Even if the Court interpreted Defendant's claim more broadly to allege that counsel was somehow ineffective for raising the issue of drug use during voir dire and giving the jurors the impression that they would hear evidence that the Defendant used drugs, Defendant still would not be entitled to relief. It is a common practice of trial attorneys to gauge potential jurors' reactions to issues that are likely to arise during trial. By raising issues that are likely to arise during trial, attorneys are able to identify jurors with strong opinions about certain topics and strike those jurors whose strong opinions may interfere with their ability to render a fair and impartial verdict. The victim's deposition revealed that the issue of drug use was likely to arise during the trial because she testified that she was initially willing to walk home with the Defendant because she wanted to smoke his crack cocaine, they smoked crack cocaine together, and she escaped from being sexually battered by the Defendant when he took a hit of crack cocaine. Notably, the State was the first to raise the issue of drug use during voir dire by asking the jurors if they would hold it against the victim if they heard testimony that she smoked crack with the Defendant before the incident. Knowing that testimony involving

allegations of drug use was likely to arise during trial, it was entirely reasonable for counsel to gauge the potential jurors' reactions to the issue of drug use. This is the kind of common trial strategy which is readily apparent form the record and does not require an evidentiary hearing to find that the action was reasonable under the circumstances of this case. This Court finds that counsel's actions fell within the broad scope of reasonable representation when raised the issue of drug use during voir dire. *See Jones*, 998 So.2d at 582. Accordingly, Claim Six fails the first prong of *Strickland*.

Although it is not necessary for this Court to apply the second prong of *Strickland* to Claim Six, the Court also finds that Defendant was not prejudiced by counsel raising the issue of drug use during voir dire. Because counsel acted to eliminate the risk of selecting a juror who might hold allegations of drug abuse against the Defendant, and the jurors stated that they would not hold allegations of drug abuse against the Defendant, this Court cannot conclude that Defendant was prejudiced by counsel raising the issue of drug abuse during voir dire and ensuring that the potential jurors could be fair given the allegations of drug use. Therefore, Claim Six fails both prongs of *Strickland* and Claim Six is denied.

(Doc. 15-3, Ex. 26, pp. 130-31) (state court's record citations omitted).

Brye does not show that the state court's decision was unreasonable. Counsel would have known that allegations of Brye's drug use would be raised during trial. Counsel stated, as the prosecution had already indicated in its voir dire, that the jury might hear about "drug activity" concerning Brye and the victim. (Doc. 15-5, Ex. 37, p. 148.) For the reasons explained by the state court in its thorough order, Brye fails to establish that counsel performed deficiently by addressing the general topic of drug use with potential jurors to assess their reactions. Further, Brye fails to show a reasonable probability of a different outcome had counsel not raised the issue. The prospective jurors stated allegations of drug use would not affect their ability to serve on the jury. (*Id.*, pp. 148-49.) Brye does not show that the state court's decision involved an

25

unreasonable application of *Strickland* or was based on an unreasonable factual determination.

In his memorandum of law, Brye also contends that trial counsel was ineffective for admitting his drug usage in opening statements and eliciting information about it during cross-examination of the victim.[3] Brye did not raise these specific allegations in his postconviction motion. (Doc. 15-2, Ex. 25, pp. 32-33.) Therefore, this aspect of Brye's claim is unexhausted. See *Smith*, 256 F.3d at 1138. As Brye cannot return to state court to raise them in an untimely postconviction motion, *see* Fla. R. Crim. P. 3.850(b), the claims are procedurally defaulted. *See Smith*, 256 F.3d at 1138. Brye does not show that an exception applies to overcome the default. *See id*.

Notwithstanding the default, however, Brye cannot show entitlement to relief. As discussed, drug use was a recurring theme in the victim's narrative and counsel would have known that evidence of Brye's drug use was certain to be presented to the jury through the State's evidence. Additionally, the prospective jurors stated that allegations about drugs would not impact their ability to decide the case. Accordingly, Brye shows neither deficient performance nor resulting prejudice under *Strickland*. Brye is not entitled to relief on Ground Five.

**Ground Six**

---

[3] During his opening statement, counsel conceded that Byre provided the victim with crack cocaine and that Brye and the victim used crack cocaine. (Doc. 15-5, Ex. 38, pp. 210-11.) On cross-examination the victim stated that Brye possessed and used crack cocaine, and counsel asked her about Brye's providing her with crack cocaine. (*Id.*, pp. 242, 245, 247, 256, 259.)

Brye argues that trial counsel was ineffective for allowing the prosecutor to conceal evidence and present false evidence to the jury. Brye contends that the prosecutor falsely told the jury that fingernail scrapings from the victim show that the victim did not consent to sexual activity. Brye claims that photographs of him taken after the incident show that the prosecutor falsely stated that the victim scratched him with her fingernails. Brye also claims the prosecutor failed to disclose the allegedly exculpatory photographs in discovery.

Brye asserts that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), which holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Brye also alleges that the State violated of *Giglio v. United States*, 405 U.S. 150 (1972), which holds that the prosecution violates a criminal defendant's due process rights by presenting evidence known to be false. *Id.* at 153-54.

The state court denied Brye's claim:

> Defendant contends that the State committed a *Brady* violation by concealing exculpatory evidence and committed a *Giglio* violation by knowingly presenting false evidence against the Defendant. Specifically, Defendant contends that the State violated *Brady* by concealing photos of the Defendant's chest and arm, which showed a small scratch and redness. Defendant seems to contend that the photos were exculpatory because the scratches were so miniscule that it would have been impossible for his DNA to be under the victim's fingernails from so small a scratch. Next, Defendant contends that the State violated *Giglio* by improperly arguing in closing that the Defendant's DNA was found deep under the victim's fingernails, and that the victim scratched the Defendant's chest. Defendant further contends that counsel was

ineffective for failing to object to the State's *Brady* and *Giglio* violations. To better address the distinct issues raised in this claim, the Court will divide Claim Eight into parts (A) and (B).

(A) – *Brady* and *Giglio* Violations

To state a claim under *Brady*, the Defendant must allege that favorable evidence existed, that the evidence was willfully or inadvertently suppressed by the State, and that the suppression of the evidence caused him prejudice. *See Smith v. State*, 931 So.2d 790 (Fla. 2006). To state a claim under *Giglio*, the Defendant must allege that "(1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." *See Guzman v. State*, 868 So.2d 498, 505 (Fla. 2003). A statement is material under *Giglio* "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id*. at 506.

While Claim Eight is facially sufficient, it is refuted by the record. First, the State did not commit a *Brady* violation by withholding photographs of the Defendant. *See Smith*, 931 So.2d at 790. While the Court fails to see how the photographs would have been exculpatory, it will accept Defendant's claim that the photographs depict only minor scratches. Defendant admits in his motion that, before the trial, counsel viewed photos of the Defendant which showed a scratch on his chest and redness. Thus, Defendant cannot now claim that the State committed a *Brady* violation by suppressing the evidence that Defendant admits counsel saw before trial. Furthermore, counsel was on notice that testimony regarding scratches and redness on the Defendant's chest would be presented at trial because Officer Cope testified to observing those injuries in his deposition, which occurred well before trial. Additionally, Defendant attaches a police report, presumably provided to the defense during discovery, which reflects that Officer Brooks observed scratches on the Defendant's chest and redness on his arm. Accordingly, Defendant fails to prove that the State violated *Brady*.

Second, it is clear from the record that the State did not commit a *Giglio* violation presenting testimony that the victim scratched the Defendant and his DNA was found under her fingernails. To state a claim under *Giglio*, the Defendant must allege that "(1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." *See Guzman v. State*, 868 So.2d 498, 505 (Fla. 2003). A statement is material under *Giglio* "if there is any reasonable likelihood

that the false testimony could have affected the judgment of the jury." *Id.* at 506.

Defendant contends that the testimony and evidence showing that his DNA was found under the victim's fingernails was false. Specifically, he contends that the State must have knowingly offered false testimony because it is a well-known fact that "scrapings of a thousand [people's fingernails] cannot produce DNA" from just one small scratch.

Defendant's theory of how DNA is deposited is simply incorrect and does not constitute a valid basis for his *Giglio* claim. To the contrary, DNA can be deposited under a person's fingernails from a small scratch. In this case, Defendant's DNA was deposited under the victim's fingernails. Defendant's conclusory and erroneous theory of DNA transfer does not support his claim that the State committed a *Giglio* violation by providing testimony that the Defendant's DNA was found under the victim's fingernails, or testimony explaining how the DNA came to be under the victim's fingernails. Therefore, Claim Eight (A) is denied.

### (B) – Ineffective Assistance of Counsel for Failure to Object to Brady and Giglio Violations

Next, Defendant contends that counsel was ineffective for failing to object to the *Brady* and *Giglio* violations discussed in Claim Eight (A). Having considered the alleged violations and finding Defendant's claims to be meritless, the Court finds that counsel was not ineffective for failing to object to the alleged violations *See Ferrell v. State*, 29 So.3d 959, 976 (Fla. 2010) (noting that counsel cannot be found ineffective for failing to raise a meritless objection). If counsel had objected, the Court would have found the alleged claims to be meritless based on the facts recounted in the Court's analysis of Claim Eight (A). Thus, there is no reasonable probability that the outcome of the trial would have been different if counsel made the objections Defendant contends counsel should have made. Therefore, Claim Eight (B) fails both prongs of *Strickland* and is denied.

(Doc. 15-3, Ex. 26, pp. 139-41) (state court's record citations omitted).

Brye does not show entitlement to relief. To establish a *Brady* violation, Brye must show that "(1) the evidence at issue is favorable to the accused, either because it

is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice." *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014). "A defendant cannot meet the second prong when, 'prior to trial, [he] had within [his] knowledge the information by which [he] could have ascertained the alleged *Brady* material.'" *Id.* (quoting *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1315 (11th Cir. 2005)). The prejudice prong, "also referred to as the 'materiality prong,' is met when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).

To establish a violation of *Giglio*, Brye "must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material—i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1208 (11th Cir. 2009) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)).

Brye has not shown a *Brady* violation. As described by the state court, Brye conceded that counsel had access to the photographs before trial. Nor does Brye establish a *Giglio* violation. Brye fails to show that the State presented false evidence about the transfer of DNA from Brye's skin to the victim's fingernails. Therefore, counsel cannot be considered ineffective for failing to object under *Brady* or *Giglio*.

Brye fails to demonstrate that the state court's claim involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. Brye is not entitled to relief on Ground Six.

**Ground Seven**

Brye asserts that the prosecution violated *Brady* and *Giglio*. Brady claims that the prosecutor failed to disclose (1) the CAT scan results for the victim's neck; (2) the clothing that the victim wore during the incident; and (3) photographs of the Petitioner just after the incident. Brye also claims that witnesses falsely testified and that these items would have proven the false nature of the testimony.

Respondent concedes that Brye exhausted these allegations in claim nine of his postconviction motion. The state court denied claim nine, but it appears that the state court interpreted his arguments as alleging *Brady* and *Giglio* violations with respect to photos of the victim and testimony about her neck, which are different evidentiary matters than those identified by Brye. Even if the state court did not rule on Brye's *Brady* and *Giglio* claim about the three evidentiary matters he identifies in both his § 2254 petition and his postconviction motion—the CAT scan results, the clothing, and the photographs of him—and that Ground Seven of the § 2254 petition therefore warrants *de novo* review, Brye cannot obtain relief.[4]

---

[4] Even assuming the § 2254 petition could be interpreted as raising the claim that the state court reviewed, Brye has failed to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying that claim. (*See* Doc. 15-3, Ex. 26, pp. 141-42.)

As for the photographs and the clothing, Brye's postconviction motion stated counsel was aware of those items. Thus, he cannot show a *Brady* violation. *See Wright*, 761 F.3d at 1278. Nor does Brye establish that the prosecution knowingly offered false testimony on those items in violation of *Giglio*. Regarding the CAT scan results, as addressed in Ground One, counsel would have been aware of the CAT scan given the victim's deposition testimony about the results. Further, as also discussed in Ground One, the nature of an injury to the victim's neck was not critical to the question the jury faced, which was whether the victim consented to the sexual activity. Nor does Brye's vague assertion about false testimony show that the State violated *Giglio* with respect to the CAT scan results. Having failed to establish a *Brady* or *Giglio* violation regarding the identified items, Brye is not entitled to relief on Ground Seven.

**Ground Eight**

Brye argues that he is entitled to relief based on the cumulative effect of trial counsel's alleged ineffective assistance. The state court denied Brye's cumulative error claim. It stated, "[h]aving denied each claim raised in the instant motion, this Court finds that Defendant's claim of cumulative error also fails." (Doc. 15-3, Ex. 26, pp. 142-43.) Brye does not show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (stating that when none of the individual claims of error have merit, there is "nothing to accumulate"). Brye is not entitled to relief on Ground Eight.

It is therefore **ORDERED** that Brye's petition (Doc. 1) is **DENIED** and his motion to hear and rule (Doc. 30) is **GRANTED** to the extent that this order resolves the petition. The **CLERK** is directed to enter judgment against Brye and to **CLOSE** this case.

## Certificate Of Appealability
## And Leave To Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Brye is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To obtain a certificate of appealability, Brye must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Brye has not made the requisite showing. Finally, because Brye is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on January 3, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE